Chapman, J.
Jim Augustus Raspold was an adopted son of John Raspold. John died testate as to all his property in 1903, and by his will bequeathed a legacy of two thousand dollars to his adopted son Jim. John left beside his said son, a widow, a sister, and the children of another deceased sister. The widow took under the *173 provisions -of the will. The son Jim died intestate, without issue, three days later than his adopted father, leaving the legacy of two thousand dollars intact; and there remains of said legacy, after payment of debts and the cost of administration, about fifteen hundred dollars for distribution. The question presented for determination is, to whom shall Jim’s administrator distribute said sum? The entire sum is claimed on the one side by the widow of John, and on the other by the sister and the children of the deceased sister of John.
Both contending parties claim by reason of the provisions-of Section 3140, Revised Statutes, the last part of which provides: “But on the decease of such- person (.the adopting parent) and the subsequent decease of such adopted child without issue, the property of such adopting parent shall descend to his or her next of kin and not to the next of kin of such adopted child.” -
• It is perfectly clear that, under this statute, the estate of Jim shall be distributed by his administrator to the next of kin of John. The question for determination, therefore, resolves itself into the question, who are the next of kin of John?
The widow of John claims that this estate should be distributed the same as if it were John’s estate and therefore, as John had left.no children, she is entitled-to the whole sum under the provisions of Section 4176 or under Section 4159 taken in connection with Section 4163. This conclusion would undoubtedly be correct were the premises correct,' but the premise that this property is to be distributed as part of John’s estate is at fault. The estate that is to be distributed is Jim’s, and Section 3140 provides for the distribution of the property that came from the adopting parent, not as the property of the adopting parent but as the property of the adopted son. The provision is, that the property shall descend to-the next of kin of such adopting parent and not to the next of kin of the adopted son. The language of the statute is that the property shall descend to the persons who are the next of kin of the person from whom the estate came, not tjiat it should be distributed as the property of the person from whom it came.
In this case I do not think it at all material that John died *174 testate or intestate. The ease would be precisely the same if John, prior to his death, had given this money to Jim, or if John had died intestate and this money had come to Jim as his distributive share-of John’s estate.-
The question arises upon a construction of Section 3140, and is not to be determined by the fact that 'John died testate; nor is it material that John’s widow took under his will. Property coming in any way from his adopting father to Jim, and Jim afterwards dying intestate and without issue, would descend the same in any case. It does not seem that the descent of Jim’s property can depend on the purely accidental circumstance that the adopting father died testate or intestate. In other words, the determination of who is to take can not depend on the fact that the adopting parent left a will or not — his widow taking this property of Jim’s estate if the father died intestate, and not taking this property if the father died testate, she taking under the will.
Section 3140 determines definitely and in itself who shall take, and this without reference to whether the adopting parent died testate or intestate. This Section 3140 does not provide that the property coming to the adopted son from the adopting parent shall be distributed as the property of the adopting parent dying intestate would be distributed, but that it shall descend to the next of kin of the adopting parent. If the statute had provided that such property shall be distributed as the property of the adopting parent, or that it should be distributed as the property of the adopting parent dying intestate would have been distributed, then Section 4176 or 4159 would apply and support the widow’s claim. But these sections determine the distribution of the estate of an intestate; they do not determine who are next of kin. The entire purpose of these sections, as well as many others among which they are found, is merely to determine the persons, the order and the amount in which the estate shall descend, or be distributed in cases of intestacy. These questions of descent and distribution the Legislature has dealt with in many cases, without regard to relationship of blood. Nowhere has the Legislature undertaken to say that the statute of descent and distribution determined kinship; *175 nor do these sections say that distribution shall be to the next of kin, and then determine who are next of kin, although in ascertaining the intention of the testator in a will the Supreme Court has held such words were used to designate persons who would take under the statute of descent and distribiition.
Section 4176 provides “when a person dies intestate and leaves no children or their legal representativé, the widow or widower shall be entitled as next of kin: ’ ’ etc.
That is not saying that the widow or widower are next of kin, but is a clear recognition of the fact that the widow or widower are injected into the class of 'next of kin, and were not of that class except by legislative enactment. If the widow or widower had been of the next of kin, the use of the words ‘ ‘ as next of kin ’ ’ would be useless as well as inappropriate. In fact in Sections 4158, 4159, 4160 and 4161, the words “next of kin” are used so as to exclude the widow or widower. As used in these sections, the words have their common law significance.
In 33 O. S., 572, the court held that the word “heirs” used by a testator in a will in respect to a bequest of personalty meant by a reference to its context “next of kin,” to the exclusion of the wife, and included the brothers, and sisters of a deceased husband.
In 38 O. S., 473, the court held that the words “heirs at law” in a devise of both realty and personalty included the wife, although it was conceded that the wife would not have been such heir by the common law rules of descent;' and they assume that the words “heirs at law” were used in the will to designate persons who would take in case of intestacy under the statutes.
' In 9 C. C., 143, Judge Laubie held .that from the context of the will the word “heirs” did not include the husband.
In each of these cases the court was construing the words used in the light of the context of the will, the intention of the testator and the circumstances; but here we are construing the words of the statute. There is no opportunity for light as to the intention of the Legislature. The words “next of kin” must be taken in their primary significance. Their meaning was clear and definite in the law long before the Legislature used them in this statute. They were confined to relationship by blood *176 and did not include the widow. At common law she was not next of kin of her husband. If the Legislature had intended to include her in the provisions of Section 3140, it would have been easy to have so worded the section, or it could have provided that such property shall descend from the adopted son to the same persons who would have taken it if it had been the property of the adopting parent from whom it came, and he or she had died intestate. But they have not so enacted and we must conclude therefore that they did not so intend, and use the words “next of kin” in their usual significance and without reference to the statute of distribution of property of intestates.
J. H. Wenneman, for widow.
Barber & Tanney, for children of deceased sister.
Suppose John had died testate in 1903, bequeathing the adopted son, Jim, a legacy of two thousand dollars; suppose his widow had died in 1904, and that Jim had died, without issue, intestate, in 1920, leaving the two thousand dollars legacy still intact; or, suppose that John had died intestate and that Jim had inherited the farm, the widow dying in 1904, and Jim dying without issue, intestate, in 1920, still owing the farm; would the widow’s representative take the legacy or farm? The next of kin of Jim who are to take under Section 3140 would be determined as upon the date of John’s death, and not as upon the date of Jim’s death; and if the widow’s contention here be correct, then her representative, however remote, must take the legacy or farm to the exclusion of the blood relatives of John, from whom the legacy and farm came.
It seems to be the purpose of this statute, and the construction placed upon it by the courts, to preserve the property that came from the adopting parent, on the death of the adopted child, without issue, intestate, to and for the blood of the parent from whence it came rather than for the blood of the child. And there seems to be equal reason to preserve it to the blood from whence it came as against the heirs or representatives of the widow of the adopting parent.
A decree may be taken ordering distribution to the sister and the children of the deceased sister in accordance with the provisions of the statute.

 Affirmed by Circuit Court without report.